LAW OFFICES OF

# F. BRYAN BRICE, JR.

F. BRYAN BRICE, JR.
CATHERINE CRALLE JONES
ANNE M. HARVEY
ANDREA C. BONVECCHIO
ROBERT R. GELBLUM, OF COUNSEL

127 W. HARGETT ST., STE. 600
RALEIGH, NC 27601
TEL: 919-754-1600
FAX: 919-573-4252
WWW.ATTYBRYANBRICE.COM

*Sent via email and U.S. certified mail*

September 28, 2021

Mattamy Homes LLC
Attn: Bruce Herbert
1210 Trinity Road, Suite 102
Cary, NC 27513
Bruce.Herbert@mattamycorp.com

and c/o Corporation Service Company, Registered Agent
2626 Glenwood Ave, Ste 550
Raleigh, NC  27608

**Re: 60-Day Notice of Intent to Sue for Violations of Clean Water Act and Endangered Species Act**

Dear Mr. Herbert or To Whom It May Concern:

This letter provides notice that Ralph and Ann Lore ("Lores") intend to file suit against Mattamy Homes, LLC for violations of the Clean Water Act ("CWA") and Endangered Species Act ("ESA").

Unless the violations described below are fully addressed, the Lores intend to file suit under Section 505(a) of the Clean Water Act[1] and §1540(g) of the Endangered Species Act[2] in the United States District Court for the Eastern District of North Carolina or other court of applicable jurisdiction no earlier than sixty (60) days from the postmark date of this Notice Letter.[3] The Lores will seek injunctive relief, civil penalties, fees and costs of litigation, and such other relief as the court deems appropriate to address the ongoing violations described below.

## I.   Summary of Violations

Ralph and Ann Lore own approximately thirty (30) acres in Wake County, North Carolina within the Middle Creek watershed.  Three creeks flow across their land, including one unnamed tributary, Cow Creek, which flows generally north to south and into Middle Creek, and Middle Creek, which flows generally west to east and is a tributary to the Neuse River.

---

[1] 33 U.S.C. §1251, *et seq.*
[2] 16 U.S.C. §1531, *et seq.*
[3] See 40 C.F.R. §135.2(c) (notice of intent to file suit is deemed served on the postmark date).

The High Grove Oaks development project at 2528 Wiltree Drive, Fuquay-Varina, North Carolina (also called the "Sugg Farm Property"), is located up gradient and approximately 1500 to 2000 feet south of the Lores' property. Upon information and belief, this 187-lot development project has resulted in unauthorized discharges and/or discharges in violation of permitted effluent standards and has caused or contributed to a violation of water quality standards in jurisdictional waters of the United States, including Middle Creek.

During the first few months of 2021, Mattamy began clearcutting the heavily forested 100-acre tract slated for the High Grove Oaks development. The headwaters of Cow Creek are on and adjacent to the tract. The original topography of the tract was highly variable and included four streams. Construction activity has modified the natural flow of Cow Creek and other waters.

On or around the week of June 20, 2021, a significant rainfall event resulted in substantial runoff and downstream sedimentation and pollution from the Mattamy development site to Cow Creek. The North Carolina State Environmental Quality Control Department and the Town of Fuquay-Varina issued a Notice of Violation to Mattamy on June 29, 2021 for these violations, Exhibit A. However, no further action was taken and sedimentation and pollution events occur with each significant rainfall event. For an illustration of the typical results of these events, see Exhibits B and C of muddy, opaque, turbid water from Cow Creek intersecting the clear waters of Middle Creek.

In July, 2021, Mr. Lore heard a loud sound as though from a pump coming from the direction of the Mattamy development site. On the morning of July 25, 2021, during a dry period when the level of Cow Creek should have been falling, it began rising and was tinted an unnatural blue-green color.

On or about August 26, 2021 another discharge from the Mattamy development into Cow Creek again resulted in substantial, runoff and downstream sedimentation and opaque pollution running into an otherwise clear Middle Creek at the confluence on the Lore Property. See Exhibits D & E.

During a rain event on September 9, 2021, stormwater from the site discharged opaque red-brown water into Cow Creek and from there to Middle Creek. See Exhibits F-J. Upon information and belief, these resulted from Mattamy construction activities, such as filling, grading, and/or redirection or other modification of existing streams.

On or about September 22, 2021 another discharge from the Mattamy development into Cow Creek again resulted in substantial, runoff and downstream sedimentation and opaque pollution running into an otherwise clear Middle Creek at the confluence on the Lores' Property. This occurred after a rainfall of two inches over a period of two days.

On or about September 24, 2021 another discharge from the Mattamy development into Cow Creek again resulted in substantial, runoff and downstream sedimentation and opaque pollution running into an otherwise clear Middle Creek at the confluence on the Lores' Property. See Exhibits K-M. This discharge was the result of an intentional release of water by Mattamy in the

afternoon when the weather was clear and dry. As a result of this release, the Cow Creek water suddenly changed to opaque and began to rise at a time when it was low and clear and the water level should have continued to fall.

These discharges and their impacts are in violation of the federal Clean Water Act prohibitions on discharge of pollutants without a permit and the violation of dredge and fill permit conditions to which the High Grove Oaks property is subject. Furthermore, the pollution of Middle Creek has resulted in damage to critical habitat and take of endangered species, including several species of benthic macroinvertebrae, freshwater mussels, the Carolina madtom catfish, and of the threatened Neuse River waterdog salamander.

These violations are in addition to state law violations of the Neuse River Basin Buffer Rule, the North Carolina Sedimentation Pollution Control Act and its implementing rules and regulations, and the common law of torts.

## II.    Clean Water Act Violations

The purpose of the Clean Water Act is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."[4] In order to achieve this aim, the discharge of pollutants to waters of the United States is prohibited except in accordance with a valid National Pollutant Discharge Elimination System ("NPDES") permit issued by the U.S. Environmental Protection Agency or delegated state authority.[5] A discharge is "any addition of any pollutant to navigable waters from any point source."[6] Pollutants include dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water".[7] Pollution is defined as "the man-made or man-induced alteration of the chemical, physical, biological, [or] radiological integrity of water."[8]

Upon information and belief, Mattamy Homes has engaged in numerous and ongoing unpermitted discharges and permit violations at the High Grove Oaks project site. After diligent inquiry, the permits to which this project is subject include: 1) North Carolina General Permit NCG 01000 for Construction Activities to discharge stormwater under the National Pollutant Discharge Elimination System of the federal Clean Water Act; 2) Water Quality General Certification Number 4139 for use of Nationwide Permit Number 29 and additional conditions under DWR certification #20-0268; and 3) General Nationwide Permit 29 issued by the Department of the Army Corps of Engineers for discharges of dredged or fill material into nontidal waters of the United States for the construction of residential developments.

### A.  NOV and Additional Violations of NCG 010000.

---

[4] 33 U.S.C. §1251(a).
[5] 33 U.S.C. §1311(a), 1342.
[6] 33 U.S.C §1362(12).
[7] 33 U.S.C §1362(6).
[8] 33 U.S.C. §1362(19).

On June 29, 2021, the North Carolina Department of Environmental Quality Division of Water Resources (DWR) issued a Notice of Violation (NOV) pursuant to Construction Stormwater general permit NCG 010000. Among the noticed violations were the failure to develop or adhere to the approved erosion and sedimentation control plan which is a condition of NCG 010000. DWR found specifically that the measures employed at the site were insufficient to prevent off-site sedimentation into buffer areas and wetlands. Upon information and belief, off-site sedimentation into buffer areas, wetlands, and streams, including Cow Creek, occur with each significant rainfall event. The photographs attached as Exhibits G through J, taken September 9, 2021, when only 1.5 inches of rain fell on the area over two days, demonstrate these continuing violations.

The June 29 NOV also found that Mattamy had failed to provide sufficient ground cover for soil stabilization. NCG 010000 Part II, Section E requires that all slopes shall be stabilized with ground cover within seven (7) calendar days from the last land-disturbing activity and that all other disturbed areas all have ground cover stabilization within fourteen (14) days of land disturbing activities. Upon information and belief, new land disturbing activities have not occurred within the past several weeks in the areas where the previously referenced Exhibit photographs were taken, but as of this Notice there is still no ground cover in those areas.

During subsequent rain events, Mr. Lore noticed that Middle Creek where it passes behind his house would become clouded with red clay sediment where it ordinarily runs clear. This change would soon occur after a significant rainfall began. On one such rain event on September 9, 2021, Mr. Lore walked to the convergence of Cow Creek and Middle Creek and observed muddy, turbid water flowing from Cow Creek into the otherwise clear stream. See Exhibit N. Mr. Lore then walked up to the Mattamy property line, where a portion of the silt fence had become dislodged. Exhibit O. Sediment and water were rushing through the fence and across the ground downhill toward Cow Creek. Exhibit P. As of the date of this letter, the silt fence has yet to be adequately repaired, in violation of Section 3(c) of the NCG 01000.

Upon information and belief, prior to land-clearing activities on the Mattamy property, rainwater would be absorbed from on-site vegetation or would collect and flow down-gradient as stormwater in one of the four streams located on the property. Stormwater from the center and northeast portion of the property would flow to one of two streams: one stream discharged to a pond on a neighboring property while the other ran into Cow Creek. Based upon construction documents and visual inspection, those streambeds appear to have been filled and graded. The site's permits do not appear to have authorized these impacts and there is no indication that Mattamy disclosed the presence of these streams in its application for a Clean Water Act §404 dredge and fill permit. Mr. Lore reported these impacts to DWR via email on September 14, 2021 but to date no notice of enforcement action has been received.

By the terms of NCG 010000, "[a]ny other point source discharge to surface waters of the state is prohibited unless covered by another permit, authorization, or approval." The permit is clear that the "Permittee *must* manage activities on the site such that water quality standards are not violated...." (Emphasis added). The unpermitted discharges evidenced in the exhibits are therefore Clean Water Act violations.

Moreover, the permit provides that "[d]isturbed areas within one mile of and draining to waters where federally-listed threatened or endangered aquatic species are present shall be limited at any time to a maximum total area within the boundaries of the tract of 20 acres. These projects shall also use control measures that are designed, installed, and maintained in accordance with criteria set forth in 15A NCAC 04B .0124 – Design Standards in Sensitive Watersheds." The Permittee appears to have failed to comply with these standards, which require sediment and pollution control measures sufficient to contain runoff from a 25-year storm.

The permit incorporates the builder's sedimentation and erosion control (SEC) plan as binding compliance obligations and is designed to account for site specific conditions. The SEC plan for Phase I of the construction plan requires that the applicant "is obligated to take additional corrective action, to contact the town of Fuquay-Varina engineering specialist…, and engineer any additional measures needed" in the event that "significant sediment is leaving the site despite proper implementation and maintenance." Any such "sediment laden runoff" "*shall*…[be] directed to roadway inlet protection" (emphasis added). The permit further requires that the "permittee shall at all times properly operate and maintain all control measures and systems of treatment and control…which are [intended] to achieve compliance with the conditions of [the] general permit." Section IV (1). Given that sediment is repeatedly migrating off-site onto Mr. Lore's property, the permittee is in violation of these provisions.

NCG 010000 further states that "discharges allowed by this General Permit shall not cause or contribute to violations of North Carolina Water Quality Standards for surface waters and wetlands (15A NCAC 2B .0200). Discharges allowed by this permit must meet all applicable water quality certification or permit requirements as outlined in 15A NCAC 2H .0500 and 2H .1300." Citations in original. The permit goes on to state explicitly that the permit is not a shield from responsibility for compliance with any other federal, state, or local laws, rules, standards, etc.

Finally, the Permittee is in derogation of their numerous inspection and reporting obligations contained throughout the general permit and which are noticed here as if each provision were described.

### B. Water Quality General Certification Number 4139 and additional conditions of DWR #20-0268.

Mattamy Homes is also subject to the requirements of Water Quality General Certification Number 4139 and additional conditions authorized by DWR #20-0268 on March 30, 2020. The conditions specified by DWR 20-0268 prohibit any unapproved impacts, including incidental impacts and reference both the reporting requirements of 15A NCAC 02B .0506 and the Neuse River Basin Riparian Buffer Rules, both of which Mattamy has violated at its High Grove Oaks development site.

The permittee must have and employ a Stormwater Management Plan (SMP) approved by the Town of Fuquay-Varina, and that plan is incorporated by reference into the additional conditions of the water quality certification. Mattamy is also in violation of this plan. The plan limits the area of disturbance to within the silt fence and tree protection lines. pg. 9 "Limits of

Disturbance Notes." The Stage Construction Sequence for both Stages 1 and 2 state that "all erosion control measures shall be inspected weekly and after rainfall events [and that] needed repairs shall be made immediately," and that "if it is determined during construction that significant sediment is leaving the site, despite proper implementation and maintenance, the contractor is obligated to take additional corrective action." The development also fails to comply with the stabilization timeframes laid out on Sheets D1.0, D1.1, and D 1.2 of its SMP.

The conditions of DWR 20-0268 (3) further state that the permittee must report any noncompliance, including "any violation of stream or wetland standards [15A NCAC 02B .0200] including but not limited to sediment impacts, and any violation of state regulated riparian buffer rules [15A NCAC 02B .0200]." Citations in original. All such reports shall be made orally within 24 hours and a written submission describing the noncompliance, its causes, and the period of noncompliance including exact dates and times, as well as steps taken to eliminated noncompliance and prevent recurrence must be provided within 5 business days.

The general conditions of GC 4139 prohibit the placement of any "waste, spoil, solids, or fill of any kind… in wetlands or waters beyond the footprint of the impacts…." Sec. II (2). Mattamy has violated this condition with the intrusion of sediment into waters beyond the footprint of the impacts. It is also believed that Mattamy has violated this provision and the prohibition against altering original stream profiles (Sec. II. (11)) in filling two streambeds on the site without prior authorization or including their presence in any of the application or certification documents.

Like the other permits to which this project is subject, GC 4139 also requires that all activities be performed and maintained in such a manner for the control of sediment and erosion "so that no violations of state water quality standards, statutes, or rules occur." Sec. II. (5). See also Sec. II. (25).

## C. Nationwide Permit 29.

Similar to the provisions discussed in permits above, the Nationwide Permit (NWP) 29, Condition 12, contains provisions requiring that "soil and sediment erosion controls must be used and maintained in effective operating condition during construction, and all exposed soil and other fills…must be permanently stabilized at the earliest practicable date." As previously discussed, the erosion and sediment control measures at the site have failed and have not been repaired, and Mattamy has not taken adequate steps to vegetate or otherwise stabilize the project area where the runoff is occurring.

Crucially, the NWP 29 general condition #3 states that any "[a]ctivities that result in the physical destruction (e.g., through excavation, fill, or downstream smothering by substantial turbidity) of an important spawning area are not authorized." As discussed in further detail below, Mattamy's operations at the High Grove Oaks development site result in substantial turbidity in downstream habitat where endemic freshwater mussels, including listed species, are found and spawn.

Condition 18 specifies that the NWP does not authorize any activity which may directly or indirectly jeopardize threatened or endangered species, or any activity which will directly or indirectly destroy or adversely modify the critical habitat of such species. As discussed in further detail below, Middle Creek is designated critical habitat for a number of listed species. Moreover, no activity may be authorized under an NWP which "may affect" a listed species or critical habitat without undertaking consultation as required under Section 7 of the Endangered Species Act. Pursuant to this requirement, Mattamy consulted regarding several listed species, for which it was determined that the project "may affect," but is "not likely to adversely effect," but only as long as Mattamy retained adequate sedimentation control measures. Their failure to maintain such control measures is a violation of but the Endangered Species Act requirements and Condition 18 of the NWP.

Finally, NWP 29 Section 3.1 limits the loss or degradation of stream bed to no more than 300 total linear feet, including ephemeral and intermittent streams. As previously described, it is believed that Mattamy filled and graded two streams in their entirety that were not delineated on maps for application and jurisdictional determination purposes.

### D. Water Quality Violations.

Runoff from the Mattamy High Grove Oaks development site has repeatedly resulted in sedimentation deposition and turbid conditions in Cow Creek and Middle Creek. After the moderate rain on September 9, 2021, Mr. Lore collected water from the creek at various locations on his property into jars, shown in Exhibit Q.

As discussed above, Mattamy is required to conduct inspections and to self-report water quality violations. In the absence of that required reported data, it is impossible to know precisely the level of turbidity in the creeks after each rainfall; however, it is clear from the images that the discharge exceeds the North Carolina Water Quality Standard of 50 NTU for turbidity. Each instance where Mattamy has caused or contributed to a water quality violation is both a violation of the terms of the permits cited above and an unauthorized/unpermitted discharge or sediment deposition.

In addition to the water quality and permit violations described above, the Mattamy discharge may also cause or contribute to water quality violations of pH, dissolved oxygen, chemical and biological oxygen demand, total suspended solids, conductivity, total nitrogen, kjeldahl nitrogen, nitrate, and nitrite, as well as possible heavy metal contaminants. Notice is provided herein of any such discharges, each of which constitute separate violations of the Act.

Upon information and belief, violations began in early 2021 and are ongoing. Mattamy has violated and will continue to violate the Clean Water Act and its implementing regulations and permit authorizations by discharging unregulated stormwater from its operations into Cow Creek and Middle Creek. Each such discharge is a separate violation under the Act.

Finally, to the extent that Mattamy's discharges impair any designated uses of Cow Creek, Middle Creek, and the Neuse River, Mattamy is also in causing a violation of North Carolina's water quality standards. 15A NC 02B .0211(2).

### III.     Endangered Species Act Violations

The ongoing water quality impairment to Cow Creek and Middle Creek has resulted in damage to critical habitat and take of threatened and endangered species. The Endangered Species Act strictly prohibits take of any endangered and most threatened species.[9]

"Take" is broadly defined by the Endangered Species Act to include any form of harm or harassment of listed species[10]. "Harm" includes significant habitat modification or degradation that results in death or injury to listed species by "impairing essential behavioral patterns…."[11] Harass is similarly defined.[12] Congress intended the term "take" to be construed in the "broadest possible manner to include every conceivable way" wildlife could be harmed.[13]

"Critical habitat" is the specific area or areas within the geographical area occupied by the species at the time it is listed on which are found those physical or biological features essential to the conservation of the species which may require special management considerations or protection as well as other areas outside the occupied range that the agency deems essential for species conservation.[14] "Destruction or adverse modification of habitat means a direct or indirect alteration that appreciably diminishes the value of [the] critical habitat as a whole for the conservation of a listed species."[15]

The Neuse River Basin, which includes Middle and Cow Creeks, is designated critical habitat for several endangered and threatened aquatic species, including the Dwarf Wedgemussel[16], the Yellow Lance[17], the Atlantic pigtoe[18], the Carolina Madtom[19], and the Neuse River Waterdog[20]. Middle Creek itself is designated critical habitat for the Neuse River Waterdog.[21] The recovery plan for the Dwarf Wedgemussel lists the Middle Creek population as one of very few remaining populations.[22] For each of these species, development, siltation, and sedimentation are primary drivers of species decline. The sedimentation and turbidity caused by runoff from Mattamy's operations have resulted in adverse modification of that habitat.[23]

---

[9] 16 U.S.C. §1538(a) prohibiting take of endangered species. Section §1538(a)(1)(G) also prohibits take any species listed as threatened prior to the issuance of 84 Fed. Reg. 44753 (August 27, 2019) pursuant to regulations promulgated under 16 U.S.C. §1533(d), also known as the "Section 4(d) rule."
[10] 16 U.S.C. §1532(19).
[11] 50 C.F.R. §17.3.
[12] *Id.*
[13] *See* S. Rep. No. 93-307, at 7 (1973), *as reprinted in* 1973 U.S.C.C.A.N. 2989, 2995.
[14] 16 U.S.C. §1532(5)(A).
[15] 50 C.F.R. §402.02
[16] 55 Fed. Reg. 9447 (March 14, 1990).
[17] 86 Fed. Reg. 18189 (May 10, 2021).
[18] 85 Fed. Reg. 59487 (October 22, 2020) (proposed rulemaking awaiting final agency action).
[19] 86 Fed. Reg. 30688 (June 9, 2021).
[20] *Id.*
[21] 86 Fed. Reg. 30718-30720
[22] US Fish and Wildlife Service Dwarf Wedge Mussel Recovery Plan, available at https://ecos.fws.gov/docs/recovery_plan/930208b.pdf at 10, 20 (last accessed 9/27/2021).
[23] *See* Exhibits R and S showing a mussel with accumulated sediment preventing shell closure. Sediment also disrupts mussels' feeding, growth, and reproduction. *See* Stoeckel, Jim "Effects of Sediment and Suspended Solids

Based on information obtained through FOIA requests to the USACE, the Mattamy High Grove Oaks development had a "may affect, but not likely to adversely affect" designation for the Neuse River Waterdog, Atlantic Pigtoe, Dwarf Wedgemussel, and Yellow Lance based on informal consultation with the US Fish and Wildlife Service. The Corps made this determination specifically in reliance on Mattamy's purported sediment and erosion control measures, which, as detailed above, have failed on numerous occasions, therefore resulting in likely adverse effects to imperiled species.

The surveys and assessments used in making these determinations do not appear to have included evaluations of potential off-site impacts to Middle Creek. However, the file does include an email from US Fish and Wildlife that emphasizes that "due to the proximity to Middle Creek and having a stream bisecting the property [that flows into Middle Creek], **we encourage the site develop to be hyper diligent in maintaining their erosion control measure, especially in advance of rainfall events."** This, clearly, Mattamy has failed to do. This failure and the increased sedimentation to Middle Creek has resulted in deleterious impacts to and likely take of threatened and endangered species.

## IV.  Persons Giving Notice

As required by 40 C.F.R. §135.3(a), the name and contact information for the persons giving notice of the aforementioned violations are:

Ralph James ("Jim") Lore and Anna M. Lore
3604 Knightcroft Place
Fuquay Varina, N.C. 27526
(919) 349-2606.

The Lores are represented by legal counsel. Per the requirements of 40 C.F.R. §135.3(c), counsel is identified as follows:

Catherine Cralle Jones
Anne M. Harvey
The Law Offices of F. Bryan Brice, Jr.
127 W. Hargett Street, Suite 600
Raleigh, NC 27601
(919) 754-1600
cathy@attybryanbrice.com
anne@attybryanbrice.com

---

on Freshwater Mussels," a presentation for the 2017 Mussel Summit, hosted by USFWS at https://www.fws.gov/southwest/es/Documents/R2ES/AUES_Mussel_Summit_17_Stoeckel.pdf (last accessed 9/27/2021).

## V. Notice of Intent to Sue

Mattamy Homes is responsible for ongoing violations of the Clean Water Act and Endangered Species Act as described above. Unless these violations are fully redressed, the Lores intend to file a citizen suit against Mattamy following the 60-day notice period.

If litigation is necessary, the Lores will seek redress for the violations described in this Notice Letter, including injunctive relief, costs, and attorneys' fees,[24] as well as civil penalties.[25] Mattamy may be assessed civil penalties up to $55,800.00 per day per violation for each Clean Water Act Violation[26] and up to $52,596 for each take of an endangered species or destruction of critical habitat.[27]

In addition to injunctions on further discharges, the Lores request that the general permit authorizations for this project be revoked and that Mattamy be required to obtain an individual permit pursuant to 15A NCAC 2H .0127(o). Reasons for requiring an individual permit include noncompliance with the general permit or Division Rules, a determination that the water of the receiving stream is not meeting applicable water quality standards, or that the discharger is a significant contributor of pollutants.

This request aligns with the terms of NCG 01000, which states that "[a]ny permit noncompliance constitutes a violation of the Clean Water Act and is grounds for enforcement action; certificate of coverage termination, revocation and reissuance, or modification; or denial of a certificate of coverage upon renewal application." Sec. V (4).

The Lores reserve the right to seek additional redress under state and federal law and do not intend by the filing of this notice to waive any other rights or remedies.

Thank you for your prompt attention to this matter.

Sincerely,

Cathy Cralle Jones

Anne M. Harvey

---

[24] 33 U.S.C. §1365(a); 16 U.S.C. §1540(g)(4).
[25] 33 U.S.C. §1319(d); 16 U.S.C. §1540(a).
[26] 40 C.F.R. §19.4.
[27] 15 C.F.R. §6.3(f)(14);

Enclosures: Exhibits A-S

**cc (*sent via email and U.S. certified mail*)**

Michael Regan
USEPA Administrator
1200 Pennsylvania Ave, NW MC 1101A
Washington, DC 20460
Regan.Michael@epa.gov

Martha Williams
USFWS Principal Deputy Director
1849 C Street, NW - MIB Rm 3148
Washington, DC 20240
Martha_Williams@fws.gov

Elizabeth S. Biser
DEQ Secretary
1601 Mail Service Center
Raleigh NC 27699-1601
elizabeth.biser@ncdenr.gov

Cameron Ingram
NC Wildlife Director
1701 Mail Service Center
Raleigh, NC 27699-1700
cameron.ingram@ncwildlife.org

Brian Wrenn
DEMLR Director
1612 Mail Service Center
Raleigh, N.C. 27699-1612
brian.wrenn@ncdenr.gov

Adam Mitchell
Town Manager of Fuqay-Varina
134 N. Main Street
Fuquay-Varina, NC 27526
amitchell@fuquay-varina.org

Danny Smith
DWR Director
1611 Mail Service Center
Raleigh, N.C. 27699-1611
danny.smith@ncdenr.gov

Lyle Phillips George
USACE District Engineer
121 W Morgan Street, Raleigh, NC 27601
L.Phillips@usace.army.mil

**cc (*sent via email only*)**

Bill Lane
DEQ General Counsel
blane@ncdenr.gov

Jennifer Mitchell
CFM, Engineering Specialist
jmitchell@fuquay-varina.org

John Ellis
US Fish and Wildlife Service
John_ellis@fws.gov

Jean B. Gibby
USACE Chief Raleigh Field Office
jean.b.gibby@usace.army.mil

EXHIBIT A



June 29, 2021

**NOTICE OF VIOLATIONS OF THE
SEDIMENTATION POLLUTION CONTROL ACT**

<u>CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>

George Young – Corporation Service Comany
2626 Glenwood Avenue, Suite 550
Raleigh, NC 27608

RE:     Project Name: **High Grove Oaks – Phase 1**
           Erosion Control Permit No.: **EC-2020-05**
           Compliance Deadlines:  14 days from receipt for SPCA violations or before July 19, 2021

Dear Mr. Young:

On **June 23, 2021,** personnel of this office inspected a project located at **3528 Wiltree Drive,** Fuquay-Varina North Carolina.  This inspection was performed to determine compliance with the North Carolina Sedimentation Pollution Control Act (SPCA) of 1973 and the Town of Fuquay-Varina's Land Development Ordinance (LDO), §9-1407, to establish and enforce the erosion and sedimentation control program.  The inspection revealed a land-disturbing activity of approximately **47.5** acres being conducted.

It is our understanding that you and/or your firm are responsible for this land-disturbing activity.  The purpose of this letter is to inform you that this activity was found to be in violation of the SPCA, G.S. 113A-50 to 66, Chapter 4 of Title 15A of the North Carolina Administrative Code (NCAC) and §9-1407 of the LDO adopted to establish and enforce the erosion and sedimentation control program.  If you feel that you are not responsible for the following violations, please notify this office immediately.

*Inspector observed that perimeter measures along southern boundary slope bases and stream buffer had succumbed to heavy stormwater runoff with sediment transport. Silt fences and silt fence outlets had topped over, allowing sediment to be transported beyond limits of disturbance and into stream buffer and wetlands. Exposed slopes are in need of stabilization.*

**The violations of the SPCA noted on the attached inspection report are:**

1.    b. Failure to conduct a land-disturbing activity in accordance with the approved erosion and sedimentation control plan.  G.S. 113A-57(5) / LDO §9-1407 (b)(1)(H).

2.    e. Failure when a land disturbing activity that will disturb more than one acre is undertaken on a tract, to install sedimentation and erosion control devices sufficient to retain the sediment generated by the land-disturbing activity within the boundaries of the tract during construction upon and development of the tract.  G.S. 113A-57(3) / LDO §9-1407.

3.    f. Failure to take all reasonable measures to protect all public and private property from sedimentation and erosion damage caused by the land-disturbing activity.  15A NCAC 4B .0105 / LDO §9-1407.

4.  g. Failure to retain along a lake or natural watercourse a buffer zone of sufficient width to confine visible siltation by natural or artificial means within the 25 percent of that portion of the buffer zone nearest the land-disturbing activity.  G.S. 113A-57(1) / LDO §9-1407 (b)(1)(C).

5.  i. Failure within up to 21 calendar days of completion of any phase of grading, to plant or otherwise provide exposed graded slopes or fills with temporary or permanent ground cover, devices, or structures sufficient to restrain erosion.  G.S. 113A-57(2)/ / LDO §9-1407 (b)(1)(E).

To correct these violations, you must:

1.  b. Install and/or maintain all sedimentation and erosion control measures as shown on the approved plan.

2.  e. Install erosion and sediment control devices sufficient to retain sediment on the tract.

3.  f. Install and/or maintain measures to protect public and private property.

4.  g. Provide an adequate stream buffer zone of sufficient width to confine visible sedimentation within the 25% of the buffer nearer the land disturbance using natural or artificial means.

5.  i. Provide temporary or permanent ground cover, devices, or structures sufficient to restrain erosion within up to 21 calendar days of completion of any phase of grading.  Please note that merely planting grass seed does not satisfy the requirements of "vegetative cover" or of "ground cover sufficient to restrain erosion."  These requirements are not satisfied until an adequate cover of grass or other ground cover (such as properly applied and secured, mulched seeding or appropriate rip-rap) is established which is, in fact, sufficient to restrain accelerated or man-made erosion.

6.  Clean up sediment loss beyond limits of disturbance and stabilize.  Stabilize in place areas with trace amounts of loss.

## SPCA Violations

The violations of the SPCA cited herein may be referred to the Engineering Director for the Town of Fuquay-Varina for appropriate enforcement action, including civil penalty assessments for an initial one-day violation and/or a continuing violation.  The penalty for an initial one-day violation may be assessed in an amount not to exceed $5,000.00.  The Town of Fuquay-Varina is not required to provide a time period for compliance before assessing an initial penalty for the violations cited herein.  Please be advised that a civil penalty may be assessed for the initial day of violations regardless of whether the violations are corrected within the time period set out below.

In addition, if the violations cited herein are not corrected within 14 days of receipt of this notice or before July 19, 2021, whichever term is longer, this office may request that the Engineering Director take appropriate legal action against you for continuing violations pursuant to NCGS 113A-61.1 and 113A-64. A penalty may be assessed from the date of the violation, pursuant to NCGS 113A-64(a)(1), and for each day of a continuing violation in an amount not to exceed $5,000.00 per day.

Please be advised that any new land-disturbing activity associated with this project should not begin until the area presently disturbed is brought into compliance with the Act.  When corrective actions are complete, you should notify this office so that work can be inspected.  You should not assume that the project is in compliance with the Act until we have notified you.  After installation, all erosion control measures must be maintained in proper working order until the site is completely stabilized.

We solicit your cooperation and would like to avoid taking further enforcement action. At the same time, it is your responsibility to understand and comply with the requirements of the SPCA. Copies of the relevant statute and administrative rules may be examined at this office or will be sent to you upon request. Should you have questions concerning this notice or the requirements of the SPCA please contact Matt Poling at 919-753-1035 at your convenience.

Sincerely,

Matthew B. Poling, PE, CFM
Engineering Director
Town of Fuquay-Varina

Enclosures:      Sedimentation Inspection Report

cc:    Adam G. Mitchell, TOFV Town Manager
       Jim Seymour, TOFV Assistant Town Manager – Development Services
       Julie Coco, PE, CPESC-NCDEQ *via email*
       Scott Vinson – NC Division of Water Resources *via email*
       Bill Denton, PE, - NCDEQ *via email*

EXHIBIT B



EXHIBIT C



EXHIBIT D



EXHIBIT E



EXHIBIT F



EXHIBIT G



EXHIBIT H



EXHIBIT I



# EXHIBIT J



EXHIBIT K



EXHIBIT L



EXHIBIT M



EXHIBIT N



# EXHIBIT O



EXHIBIT P



EXHIBIT Q



EXHIBIT R



EXHIBIT S

